## 11201

### WELLS v. SUMTER TRUST CO., Exor.

#### (117 S. E., 519)

1. APPEAL AND ERROR—NO REVIEW OF JURY'S FINDINGS SUPPORTED BY EVIDENCE.—Where there was testimony tending to sustain the allegations of the complaint, the findings of fact by the jury will not be reviewed.

2. APPEAL AND ERROR—IN FARM OVERSEER'S ACTION FOR BALANCE DUE, EXCEPTIONS BY DEFENDANT HELD NOT TO SHOW PREJUDICIAL ERROR.—In an action by a farm overseer for the balance due on an agreement to pay him a percentage of the net profits of the farm, which action resulted in a judgment for plaintiff, exceptions *held* not to show prejudicial error.

Before WILSON, J., Sumter, July, 1922. Affirmed.

Action by F. A. Wells against the Sumter Trust Co. as Executor of the Estate of F. K. Holman, deceased. Judgment for plaintiff and defendant appeals.

### STATEMENT OF FACTS

This action was commenced on the 18th day of December, 1919. The plaintiff sues as overseer on the defendant's farm, claiming that in addition to a monthly salary he was

to receive a percentage of the net profits realized upon said farm for the years 1914 and 1915, that the defendant stored most of the cotton and did not sell it until 1918 and 1919, and that the defendant has never paid his percentage, and alleges that the defendant is indebted to him in the sum of $10,000 therefor.   Inasmuch as some of the questions involved in this appeal grew out of the construction 'of the pleadings, the Court is respectfully referred to the pleadings hereinafter shown for the issues made by the pleadings. This action was originally commenced against the defendant Dr. F. K. Holman, and some months after its commencement Dr. Holman got into a very precarious condition of health and was for a long time confined in hospitials outside of the state until he came to his death in the month of February, 1922, after which, on motion and by order of the Court, the Sumter Trust Company, as executor of the last will and testament of Dr. F. K. Holman, was substituted as the defendant in the action.

### COMPLAINT

The plaintiff above named, complaining of the defendant herein, alleges:

I. That for the years 1914 and 1915 the plaintiff was employed by the defendant as general manager and overseer of a large farm conducted by the defendant at Mechanicsville, in Lee County, of said state.

II. That it was agreed between the parties that the plaintiff should be paid for his services the sum of $25 per month, and, in addition thereto, he was to receive 20 per cent. of the entire net profits realized upon, and in connection with, said farm for the years 1914 and 1915, the said percentage to be paid him when all crops were harvested and sold, and the accounts adjusted; that this percentage was to be paid not only from the net profits of the actual farming operations, but also from the net profits realized from the sharecroppers, and from the purchase and sale of cotton and the sale of merchandise on the place.

III. That the plaintiff performed his part of said agreement and performed the duties thereunder for said years for the benefit of the defendant and carried out his contract in all respects.

IV. That the defendant stored most of the cotton raised and bought under said contract, and has only sold the same as recently as the years 1918 and 1919; but, although he has been repeatedly called upon to make settlement under said contract, he has refused to do so, and has never paid the plaintiff anything upon said percentage.

V. The plaintiff is informed and believes that the net profits for the said two years' operations have amounted to at least $50,000, of which the plaintiff's percentage would amount to $10,000, for which amount the defendant is now indebted to the plaintiff.

VI. That the defendant kept all the accounts under said contract, and although he has been requested to exhibit said accounts to this plaintiff, and make an accounting to him under said contract, he has failed and refused either to exhibit said accounts or to make an accounting thereunder, and has kept all of the net profits gained in said operations for himself, and converted them to his own use, to the loss of this plaintiff in the sum of $10,000, as aforesaid.

### ANSWER

Expressly reserving and not waiving his motion to make the complaint more definite and certain, and reserving all manner of exception to the sufficiency of the complaint, whether by way of demurrer or otherwise, the defendant F. K. Holman, answering the complaint herein, for defense alleges:

(1) Answering the first paragraph of the complaint, the defendant admits that the plaintiff was employed by him as general manager and overseer of the farm referred to in the complaint, but alleges that the plaintiff procured such employment by holding himself out and representing himself to

be a very competent and experienced man for the position, whereas it turned out that be was neither competent nor experienced.

(2) The defendant denies that the compensation of the plaintiff was to have been as alleged in the second paragraph of the complaint (which is hereby answered); but, on the contrary, this defendant alleges that the agreement was that the plaintiff should be paid for his services the sum of $50 per month (which this defendant has paid in full for each and every month) plaintiff was in his employ; and, in addition thereto, plaintiff was to receive only 10 per cent. of the net profits realized from the business referred to in the complaint, but no more.

(3) Answering paragraph 3 of the complaint, this defendant denies that the plaintiff performed his part of the agreement and the duties thereunder in a satisfactory manner, or that he carried out his contract in all respects, but, on the contrary, by his negligence, inattention, and incompetency, caused the business to lose money up to the time he ceased his connection with the same, and he failed to account to the defendant for various articles of merchandise of considerable value, which were intrusted to his care in the course of such employment, and which the defendant thereby lost, either through the plaintiff's misappropriation or negligence.

(4) Answering paragraph IV of the complaint, this defendant admits that he stored some of the cotton referred to in the complaint, and did not sell same until 1918 and 1919, but alleges that this was done after plaintiff had severed all connection with said business and while he had no interest in such cotton as hereinafter alleged; such storing having been done by the defendant F. K. Holman at his own risk and expense, and for his own benefit after having had a settlement in full with the plaintiff as hereinafter alleged. This defendant further alleges that a good part of the cotton made in the operations referred to in the complaint was, per force of necessity, and in order to defray expenses, sold in 1914

and 1915 under depressed market conditions. That at such time the Great War in Europe was raging, business was on a slump, and market prices very much depressed, with a very doubtful outlook for the better; and this, added to the plaintiff's incompetent and negligent conduct of the defendant's business, caused such business at that time to show an actual loss of many thousands of dollars, without promise of bettering itself, on account of which state of affairs this defendant then owed the plaintiff nothing at all; but, notwithstanding all of this, and at the plaintiff's solicitation and request, this defendant then had a settlement in full with the plaintiff and paid him a lump sum of money in full settlement, and for all the plaintiff's right, title, and interest in the proceeds and profits of said operations, which the plaintiff received and accepted in full, acknowledging such in writing; and the defendant F. K. Holman then took and bore all of the risks, costs, chances, and responsibilities on his own shoulders, and endured the hazards of holding the remainder of said cotton at his own expense and risk and for his own benefit. And this defendant, F. K. Holman, pleads such settlement in bar of this action and of any further accounting; and alleges that he has paid the plaintiff in full of everything he ever owed him, and denies that he now owes him anything whatsoever.

(5) This defendant denies the allegations of the fifth paragraph of the complaint, and alleges that the business referred to in the complaint had actually lost money up to the time of settlement with the plaintiff as alleged in this answer.

(6) Answering paragraph 6 of the complaint, this defendant admits that he kept some accounts of the business matters referred to in the complaint, but alleges that they were and are his private accounts (and not books of mutual entries), in which the plaintiff has no interest; and this defendant further alleges that, under the contract referred to in the complaint, the plaintiff owed this defendant the duty to account, there being no provision that defendant should ac-

count to plaintiff, who was the employee of the defendant intrusted with the defendant's affairs and property, but that the plaintiff has never accounted to this defendant in full for all of the money and property intrusted to him, nor offered to do so. The defendant F. K. Holman further alleges that he alone was entitled to any profits gained by such operations or on account of holding cotton, after he had settled, as he did, with the plaintiff as aforesaid. This defendant denies that plaintiff lost any money whatsoever on account of any conversion by this defendant, who denies that he converted anything to his own use except what was his own and to which he was lawfully entitled. All the allegations of the said paragraph inconsistent with the above are hereby denied.

(7) For further defense this defendant alleges that the plaintiff had been guilty of such laches as would bar this claim for accounting for this action, having let several years elapse after severing his connection with the defendant's business without putting the defendant on notice that he would make further demand on him for any accounting, and enabling defendant to keep accounts for that purpose.

The answer further set up a counterclaim against the plaintiff in the sum of $367.50 for medical services alleged to have been rendered the plaintiff by the defendant Dr. F. K. Holman, and not paid for; such services being itemized in said counterclaim.

The plaintiff served a verified reply to the counterclaim, in which he alleged that there never has been a settlement between him and the defendant, and that the defendant did perform certain professional services for the plaintiff between the times alleged in the counterclaim, but this plaintiff alleges that the said services were to be paid for out of the profits made in said farming operations, and not out of the salary allowed for this plaintiff; that the amount claimed by the defendant in his said counterclaim is largely in excess of the true amount due, and this plaintiff puts the defendant upon proof of his account, the plaintiff having paid the said

defendant from time to time upon said account; that the said account is excessive and is more than this plaintiff ever owed the said defendant. The case came on for trial on July 18, 1922, before his Honor Judge Wilson and a jury.

The appeal comes from a verdict and judgment thereon in favor of the plaintiff against the defendant in the sum of $10,325.64. Judgment was duly entered upon this verdict, and within due time the defendant served upon the attorneys for the plaintiff due notice of intention to appeal to the Supreme Court.

### JUDGE'S CHARGE TO THE JURY

The plaintiff claims that during the years 1914 and 1915 he was employed by the defendant now deceased, F. K. Holman, as general manager and overseer of a large farm conducted by Holman, now deceased, to wit, at Mechanicsville, in Lee County, of said State.

Now, the defendant admits that partially; that is, he was employed by Holman—Wells was employed by Holman as general manager and overseer—but alleges that the plaintiff procured such employment by holding himself out and representing himself to be a very competent and experienced man for the position, whereas it turned out that he was neither competent nor experienced.

The plaintiff further claims that it was agreed that the plaintiff should be paid for his services the sum of $25 per month, and in addition thereto he was to receive 20 per cent. of the entire net profits realized upon, and in connection with, said farm for the years 1914 and 1915, the said percentage to be paid him when all crops were harvested and sold, and the accounts adjusted; that this percentage was to be paid not only from the net profits of the actual farming operations, but also from the net profits realized from the share-croppers, and from the purchase and sale of cotton, and the sale of merchandise on the place.

This defendant denies that the compensation of the plaintiff was to be as alleged in that I have just read, but that the

plaintiff was to receive for his services the sum of $50 per month, which the defendant has paid in full for every month the plaintiff was in his employ, and that the plaintiff was to only receive 10 per cent. of the profits realized from the business, and was to receive no more. The plaintiff further claims that the plaintiff performed his part of the agreement for the said years for the benefit of the defendant, and carried out his contract in all respects.

The defendant denies that, and said this: He denies that the plaintiff performed his part of the agreement but, on the contrary, by his negligence, inattention, and incompetency, caused the farm to lose money ever since he was in the employment of the defendant, and that he failed to account to the defendant for various articles of merchandise of considerable value which were intrusted to his care in the course of such employment, and which the defendant thereby lost either through the plaintiff's misappropriation or negligence.

The plaintiff further alleges that the defendant stored most of the cotton raised and bought under such contract, and has only sold the same as recently as the years 1918 and 1919, and, although he has been repeatedly called upon to make settlement under said contract, he has never done so.

Answering that, the defendant admits that he stored some of the cotton mentioned in the complaint, and did not sell same until 1918 and 1919, but alleges that this was done after plaintiff had severed all connection with the business and while he had no interest in such cotton as alleged; such storing having been done by the defendant F. K. Holman at his own risk and expense and for his own benefit, after having had a settlement in full with the plaintiff. This defendant further alleges that a good part of the cotton made in the operations referred to in the complaint was, perforce of necessity, and in order to defray expenses, sold in 1914 and 1915 under depressed market conditions; that at such time the Great War in Europe was raging, business was on a slump and market prices very much depressed, with a very

doubtful outlook for the better, and this added to the plaintiff's incompetent and negligent conduct of the defendant's business, caused such business at that time to show an actual loss of many thousands of dollars, without promise of bettering itself, on account of which state of affairs this defendant then owed the plaintiff nothing at all, but, notwithstanding all of this, and at the plaintiff's solicitation and request, this defendant then had a settlement in full with the plaintiff, and paid him a lump sum of money in full settlement, which the plaintiff received and accepted in full, acknowledging such in writing; and the defendant F. K. Holman then took and bore all of the risks, costs, chances, and responsibilities on his own shoulders, and endured the hazards of holding the remainder of said cotton, at his own expense and risk, and for his own benefit. And this defendant, F. K. Holman, pleads such settlement in bar of this action and of any further accounting, and alleges that he has paid the plaintiff in full of everything he ever owed him, and denies that he now owes him anything whatsoever.

The plaintiff, further complaining, said that he is informed and believes that the net profits for the said two years' operations have amounted to at least $50,000, of which the plaintiff's percentage would amount to $10,000, for which amount the defendant is now indebted to the plaintiff.

The defendant denies those allegations, and alleges that the business referred to in the complaint had actually lost money up to the time of settlement with the plaintiff, instead of making money as he claims.

The plaintiff, further complaining of the defendant, makes the following allegations: That the defendant—that is, Holman—kept all of the accounts under said contract, and although he has been requested to exhibit such accounts to the plaintiff, Wells, and make an accounting to him under said contract, he has failed and refused either to exhibit said accounts or make an accounting thereunder, and has kept

all of the net profits gained in said operations for himself, and converted them to his own use, to the loss of said plaintiff, and then he has asked you for a verdict for $10,000, which has been amended to $10,535.64. The amount is $10,535.64 that they ask you a verdict for. ·

Now, answering that, the defendant, this defendant, admits that he kept some of the accounts of the business matters referred to in the complaint, but alleges that they were and are his private accounts, in which the plaintiff has no interest, and further alleges that under the contract referred to by the plaintiff the plaintiff owed this defendant the duty to account, there being no provision that the defendant should account to the plaintiff, who was the employee of the defendant, intrusted with the defendant's affairs and property, but that the plaintiff has never accounted to this defendant in full for all of the money and property intrusted to him, nor offered to do so. The defendant further alleges—that is, F. K. Holman—that he alone was entitled to any profits gained by such operations or on account of holding cotton after he had settled, as he did, with the plaintiff as aforesaid. He claims he has settled with him in full. He denies that the plaintiff lost any money whatsoever on account of any conversion by this defendant, and he denies all the allegations of the complaint inconsistent with that defense.

Now, as a further defense, after denying what plaintiff alleges, and specifically answering the plaintiff's allegations, the defendant sets up an additional defense as follows: For further defense this defendant alleges that the plaintiff had been guilty of such laches as would bar this claim for accounting or this action, having let several years elapse after severing his connection with the defendant's business, without putting the defendant on notice that he would make · further demand on him for any accounting and enabling defendant to keep accounts for that purpose.

Now the defendant, in addition to that, sets up what is known as a counterclaim, which is nothing more nor less than

a cross-suit. A defendant can deny the allegations of the plaintiff, and put the plaintiff on proof, deny the plaintiff's rights, alleged rights, and, in addition to putting in the denial in certain actions—and this is one in which that can be done—can put up what is known as a counterclaim, growing out of the same transaction, nothing more nor less than a cross-suit.

Further answering the complaint, and as a counterclaim thereto—that is, to the plaintiff's contentions—this defendant alleges that at all times hereafter mentioned he was a physician, duly licensed and practicing as such at Sumter, and in the counties of Sumter and Lee, and in the state aforesaid; that between the 14th day of July, 1911, and the 22d day of September, 1915, this defendant rendered professional services to the plaintiff at his request in and about the treatment of the plaintiff and the members of his immediate family, with whose support and for whose maintenance the plaintiff was charged, the same being for various maladies under which said persons respectively labored, the times and dates of this defendant's visits being specifically set forth in Schedule A, hereto annexed and made a part hereof, and for diverse medicines and other articles supplied by this defendant for the plaintiff in his request and also set forth in the schedule, which represents a running account carried on from time to time; that the said service and materials were and are reasonably worth the sum of $367.50, after allowing credits shown in Schedule A, according to the charges made for like items by physicians generally in and about the said places, and that the plaintiff is indebted to him for that amount, and that he has never paid any part thereof to the defendant, and he asks that the complaint be dismissed, and that he have judgment for that amount against the plaintiff.

Now, in reply to that counterclaim the plaintiff says this: He admits that there has never been a settlement between him and the defendant, and that the defendant did perform such services, between the times alleged in the counterclaim,

but that the plaintiff alleges that the said services were to be paid for out of the said farming operations, and not out of the salary of the plaintiff, and that the amount set forth in the counterclaim is largely in excess of the amount due, and he puts the defendant upon proof of his account. He says it is not correct. You have heard the testimony on both sides in regard to that counterclaim, and you will consider that and everything else, of course.

Now, the plaintiff has asked me to charge you as follows: "The jury is charged that every material allegation of the complaint in this suit which is not denied by the answer will be taken by you as being true. It is not necessary to introduce any evidence in support of such allegation, when they are not denied by the answer." Now, I have tried to state the issues to you, what the complaint contends, and what the answer contends. I charge you that as a matter of law.

(2) "Where a contract between two parties provided the time for settlement thereunder, such provision will control over any rules of law with reference to the time for settlement, where no time is stated in the contract." You understand that; I charge you that. Now, for the defense, I charge you as follows:

(3) "I charge you that an overseer of a farm is one who is employed, not to labor himself, but to overlook and direct the labor of those who are employed to do the manual work of planting, cultivating, and gathering a crop." I charge you that is the strict legal term of an overseer. I charge you that, but I charge you also that, if the facts show that he was to do other things, he could do them. Of course, the facts in each particular case will govern you. You see, if the facts prove he was to do other things, and the proper allegations are made, it is not necessary to confine the overseer to one particular thing.

(4) "I charge you that in the case of an overseer and his employer, where the overseer is to be paid a commission, the crop itself belongs to and is all of it the property of the em-

17—S. C.—124

ployer, and all that the overseer is entitled to is in the nature of a chose in action, or right to demand compensation in money for his labor, in accordance with his contract." I charge you that, but in this case I charge you it is for you what is the contract. You have heard the claim of both sides, you have heard testimony on both sides, and the contract will govern.

(7) "The jury is charged that if they find that the plaintiff you to decide what is the contract. You have heard the recover nothing." I charge you that.

Now, gentlemen, it is incumbent upon the plaintiff to make out his case by greater weight of the evidence; that that means the greater weight that the jury will give the evidence. That does not necessarily mean the greater number of witnesses. You see the witnesses on the stand and look at them. You judge of their manner of testifying; the probability of the correctness of their statements; in other words, to use a homely expression, but one that we all understand, you size the witness up. That is your duty. The Judge can't help you. It is against the Constitution to say what witnesses are in error, or what witnesses are falsifying. Of course, you know very often good, honest men don't mean to tell an untruth, but some men differ in their view of things. You are to get at the truth as near as you can. Every jury should do that by weighing the testimony, weighing the testimony in the case, and following this rule: That the plaintiff, in order to recover in a case of this kind, must make out his case by the greater weight or preponderance of the evidence —the weight that you give it. If the plaintiff has done that, then what amount has he proved.

Then as to the counterclaim:

Mr. Epps: We admit $210.

The Court: $210 of the counterclaim is admitted. Then the balance of the counterclaim has to be proven by the defendant by the greater weight of the evidence, but before the plaintiff can recover anything he has to make out his case by

the preponderance or greater weight of the evidence. So, gentlemen, you will have the record. If you find for the plaintiff, say "We find for the plaintiff so many dollars or so many dollars and cents," and write your name as foreman. If you find for the defendant anything on the counterclaim, say, "We find for the defendant so many dollars and cents," and write your name as foreman. If you find for the defendant, but don't find anything for the defendant on the counterclaim, say, "We find for the defendant," and sign your name as foreman. Anything else, gentlemen?

Mr. Moise: We ask your Honor to charge this (handing paper to the Court).

Mr. Epps: May we see the request; we may consent.

The Court: I think you have a right to see it.

Mr. Epps: I respectfully submit, your Honor, there is no such law as that.

The Court: I charge you as follows: Now, mind you, I am not telling what witnesses you are to believe, or what you are not to believe. "When no time is fixed by the contract to ascertain the net profits, then the law will fix the time at the end of the term of employment." That is, gentlemen, the law, but you are to be governed by the facts in each case. That is the proposition of law, but you must be goverened by the facts in each case. The plaintiff must make out his case by the greater weight of the evidence.

The jury rendered a verdict in favor of the plaintiff for $10,325.64, and judgment was duly entered thereon. A motion for a new trial was duly noted and argued, and the same was refused by the Court. Prior to the argument on the motion for new trial the attorneys for the defendant served on the attorneys for the plaintiff the following written grounds of motion for new trial, upon which grounds the said motion was heard, to wit:

### GROUNDS OF MOTION FOR A NEW TRIAL

The defendant in this case respectfully moves the Court for a new trial upon the following grounds, to wit:

I. Your Honor erred, it is respectfully submitted, in refusing the defendant's motion for a directed verdict upon the ground, substantially, that because under the contract proven in this case and the view most favorable to the plaintiff of the evidence adduced, the commission he was to receive out of the net profits of the crops produced under his overseership can only be ascertained by calculating it on the market value of such crops at the conclusion of each respective year's operation under his overseership, and cannot extend to profits, if any, made as the result of storing and holding cotton in later years, there being no evidence of any contract to so store and hold cotton for the mutual benefit of plaintiff and defendant's testator; and, since the undisputed evidence showed that there were no net profits at the conclusion of each respective year's operation under his overseership, to wit: 1914 and 1915, he was and is due no commission thereon, and a verdict should have been directed for the defendant.

II. Your Honor erred, it is respectfully submitted, in refusing defendant's motion for a direction of verdict as to any commission claimed by the plaintiff out of, or because of, the share-croppers' portion of the crops here involved, because plaintiff's own evidence, and the view most favorable to him of the whole evidence adduced shows either: (1) That such portion of the crops was acquired solely for the benefit of Dr. Holman, there being no evidence of any contract that plaintiff was to have shared therein; or (2) that there has never been any settlement or adjustment with said share croppers as to such portion of the crops, and, according to plaintiff's testimony, no settlement was made with the share-croppers, who were merely credited with the market price of their share of the crop at the time they delivered the same, and therefore, if any one would be entitled to any profits thereon, the share-croppers would be.

III. Because your Honor erred in refusing to charge the defendant's first request to charge, as follows: "I charge you that, under the contract proven in this cause, the measure

of plaintiff's recovery, if anything at all, could only be the amount of net profits which plaintiff would have received under the contract if carried out, to wit: the value of his share of the net profits when first ascertainable at the conclusion of each respective year's business under his overseership, and not what the cotton may have risen to in subsequent years."

IV. Because your Honor erred in refusing to charge the defendant's second request to charge as follows: "I charge you that under the contract and evidence here the commission plaintiff was to receive out of the crops raised under his overseership can only be ascertained by calculating it on the market value of such crops at the conclusion of each respective year's operation under his overseership, and his commission cannot extend to profits, if any, made as the result of storing and holding cotton in later years, because there is no evidence in this case of any contract to so store and hold cotton for the mutual benefit of the parties."

V. Because your Honor erred, it is respectfully submitted, in refusing to charge the defendant's fifth request to charge, as follows: "I charge you under the evidence here that in ascertaining the net profits, if any, of the business out of which plaintiff may be entitled to a commission, the value of the share-croppers portion of the cotton in question cannot be taken into consideration."

VI. Because the jury violated your Honor's charge wherein your Honor charged them at the request of the defendant in effect that, where the contract was silent as to the time for ascertaining the net profits, they would have to be ascertained according to the market value of the crops at the conclusion of each respective year's business, whereas the jury has apparently fixed the value of the crops at the time of the alleged sale of the cotton in question in March, 1918.

VII. Because the complaint itself, in undertaking to set out the contract, does not allege any time for the ascertainment of net profits, and therefore, under the law as charged

by your Honor, the time to ascertain the profits could have been only at the end of each respective year's operation from the plaintiff's overseership, and the jury violated your Honor's charge in this respect.

VIII. Because, your Honor erred in charging the plaintiff's first request to charge, as follows: "The jury is charged that every material allegation of the complaint in this suit which is not denied by the answer will be taken by you as being true. It is not necessary to introduce any evidence in support of such allegations, when they are not denied by the answer."

It was error to charge the foregoing to the jury because your Honor alone should have construed the pleadings, and should not have submitted them to the jury for construction, and it is apparent from the verdict that the jury construed the pleadings to mean that the net profits could be ascertained on market prices prevailing several years after the conclusion of the plaintiff's overseership and when the cotton in question was alleged to have been sold; whereas the answer does not admit that the contract was that the net profits could have been ascertained at such time; and the complaint itself, moreover, does not even allege that the net profits were to be ascertained or computed at that time, but merely that the plaintiff commission was to be paid then, which could not be construed to mean that they should be computed then.

IX. Because your Honor erred in refusing to charge the defendant's sixth request to charge, as follows: "The jury is charged that the plaintiff can only recover such damage as naturally flows from the contracts as was in the contemplation of the parties at the time the contracts were entered into, and if you find that at the times the contracts were entered into that the contracts did not provide, nor was it in the contemplation of the parties, that the cotton was to be stored, then I charge you that the plaintiff cannot recover any more than the actual value of the crops at the end of the years 1914, and 1915; less all expenses, including rent."

X. The verdict was excessive, and much more than the evidence, in any view of it, justified.

XI. The verdict was contrary to the law as charged by his Honor and unsupported by the evidence.

ADDITIONAL GROUNDS FOR MOTION FOR NEW TRIAL

(1) That your Honor erred, it is respectfully submitted, in not construing the contract as set out in the complaint and in not holding that the said contract as set out in the complaint was a contract of hire, wages to be paid to the servant, the amount to be 20 per cent. of the net profits, the same to be ascertained at the end of each contract year based upon the market prices of the commodities made during the current year.

(2) That your Honor erred in not construing the contract as proven and in failing to hold that the contract proven was a contract of hire, the amount of compensation to be based upon 20 per cent. of the net profits, same to be ascertained at the end of each current year, based upon the market price of commodities made during said year.

(3) That your Honor erred in not holding that the contract as set out in the complaint contained no time for the ascertaining of the net profits, and that therefore the net profits must be ascertained at the end of each year, and that the statement in the complaint that the compensation was to be paid at a later date could not be construed into meaning that the profits were to be ascertained at said later date; it being the duty of the Court to construe contracts, and not to make them for the parties.

(4) That your Honor erred in not holding the contract as set out in the complaint and as proven only contemplated such profits as Holman should make out of his portion of the crops, and that it could not be construed to mean profits that might, be made by Holman out of cotton bought from sharecroppers or any one else.

(5) That your Honor erred, it is respectfully submitted, in not holding that the plaintiff's testimony as to expenses

incurred was too general, uncertain, and speculative, and for that reason the plaintiff is not entitled to recover, he having failed to make out his case as alleged in the complaint.

(6) That the jury did not take into consideration loss incurred on advances to share-croppers, cost of storage for cotton, rent of lands, and other necessary and legitimate expenses which should have been deducted.

## EXCEPTIONS

I. His Honor erred, it is respectfully submitted, in refusing to direct a verdict for the defendant generally upon the ground that, since, under the proven contract, plaintiff, as overseer, was to have received as compensation 20 per cent. of the net profits of the crops produced under his overseership, this meant 20 per cent. of the net profits at the conclusion of each year's business, to wit: 1914 and 1915, based on the value of such crops at those times; and since, under the evidence and admissions of plaintiff himself, the business showed no profits at the conclusion of the respective years 1914 and 1915, based on market prices proven and admitted by plaintiff, but all the profits were made as the result of a storing speculation against higher markets, and there is no evidence of any contract that plaintiff was to participate in the fruits of such storing speculation, there was nothing that plaintiff was entitled to recover at all.

II. His Honor erred, it is respectfully submitted, in not granting a directed verdict for the defendant, on defendant's motion at the conclusion of the testimony, on the ground that the plaintiff alleged in his complaint that his contract with Dr. Holman was that he was to receive in addition to $25 per month 20 per cent. of the entire net profits realized upon and in connection with said farm for the years 1914 and 1915, which said percentage was to be paid him when all crops were harvested and sold and the accounts adjusted; that this percentage was to be paid not only from the net profits of the actual farming operations, but also from the

net profits realized from the share-croppers and from the purchase and sale of cotton and the sale of merchandise on the place, and it appeared from the uncontradicted evidence that at the end of the years 1914 and 1915, and when the crops were all harvested, that, based upon the market value of the crops at such times, there were no net profits; that no cotton had been bought or sold; that no profits were made from merchandise and no net profits realized from share-croppers, and therefore, as a matter of law, the plaintiff was not entitled to receive any amount.

III. His Honor erred, it is respectfully submitted, in refusing the defendant's motion for a new trial upon ground No. 1, as follows: "Your Honor erred, it is respectfully submitted, in refusing the defendant's motion for a directed verdict upon the ground, substantially, that because under the contract proven in this case and the view most favorable to the plaintiff of the evidence adduced, the commission he was to receive out of the net profits of the crops produced under his overseership can only be ascertained by calculating it on the market value of such crops at the conclusion of each respective year's operation under his overseership, and cannot extend to profits, if any, made as the result of storing and holding cotton in later years, there being no evidence of any contract to so store and hold cotton for the mutual benefit of plaintiff and defendant's testator; and, since the undisputed evidence showed that there were no net profits at the conclusion of each respective year's operation under his overseership, to wit: 1914 and 1915, he was and is due no commission thereon, and a verdict should have been directed for the defendant."

IV. His Honor erred, it is respectfully submitted, in failing and refusing to charge the defendant's first request to charge, as follows: "I charge you that, under the contract proven in this cause, the measure of plaintiff's recovery, if anything at all, could only be the amount of net profits which plaintiff would have received under the contracts if carried

out, to wit: the value of his share of the net profits when first ascertainable at the conclusion of each respective year's business under his overseership, and not what the cotton may have risen to in subsequent years." This was error because the above request set forth a correct statement of the law applicable to this case, and should have been charged.

V. His Honor erred, it is respectfully submitted, in refusing the defendant's motion for a new trial on ground No. 3 as follows: "Because your Honor erred in refusing to charge the defendant's first request to charge as follows: 'I charge you that, under the contract proven in this cause, the measure of plaintiff's recovery, if anything at all, could only be the amount of net profits which plaintiff would have received under the contract if carried out, to wit: the value of his share of the net profits when first ascertainable at the conclusion of each respective year's business under his overseership, and not what the cotton may have risen to in subsequent years.' " This was error, because the above request set forth a correct statement of the law applicable to the evidence in this cause and should have been charged.

VI. His Honor erred it is respectfully submitted, in failing and refusing to charge defendant's second request to charge, as follows: "I charge you that under the contract and evidence here the commission plaintiff was to receive out of the crops raised under his overseership can only be ascertained by calculating it on the market value of such crops at the conclusion of each respective year's operation under his overseership; and, his commission cannot extend to profits, if any, made as the result of storing and holding cotton in later years, because there is no evidence in this case of any contract to so store and hold cotton for the mutual benefit of the parties." This was error, because the above request set forth a correct statement of the law applicable to this case, and should have been charged.

VII. His Honor erred, it is respectfully submitted, in refusing the defendant's motion for a new trial on ground No.

4, as follows: "Because your Honor erred in refusing to charge the defendant's second request to charge as follows: 'I charge you that under the contract and evidence here the commission plaintiff was to receive out of the crops raised under his overseership can only be ascertained by calculating it on the market value of such crops at the conclusion of each year's operation under his overseership; and his commission cannot extend to profits, if any, made as the result of storing and holding cotton in later years, because there is no evidence in this case of any contract to so store and hold cotton for the mutual benefit of the parties.' " This was error, because the above statement set forth a correct statement of the law applicable to the evidence in this case and should have been charged.

VIII. His Honor erred, it is respectfully submitted, in failing or refusing to charge defendant's sixth request to charge hereinafter quoted, and in refusing defendant's motion for a new trial upon ground No. 9, as follows: "Because your Honor erred in refusing to charge the defendant's sixth request to charge, as follows: 'The jury is charged that the plaintiff can only recover such damage as naturally flows from the contracts as was in the contemplation of the parties at the time the contracts were entered into, and, if you find that at the times the contracts were entered into the contracts did not provide, nor was it in the contemplation of the parties, that the cotton was to be stored, then I charge you that the plaintiff cannot recover any more than the actual value of the crops at the end of the years 1914 and 1915, less all expenses, including rent.' " This was error because the above request set forth a correct statement of the law applicable to this case, and should have been charged.

IX. His Honor erred, it is respectfully submitted, in refusing the defendant's motion for a new trial on additional ground No. 1, as follows: "That your Honor erred, it is respectfully submitted, in not construing the contract as set out in the complaint was a contract of hire, wages to be

paid to the servant, the amount to be 20 per cent. of the net profits, the same to be ascertained at the end of each contract year based upon the market prices of the commodities made during the current year."

X. His Honor erred, it is respectfully submitted, in refusing defendant's motion for a new trial upon additional ground No. 2, as follows: "That your Honor erred in not construing the contract as proven and in failing to hold that the contract proven was a contract of hire, the amount of compensation to be based upon 20 per cent. of the net profits, same to be ascertained at end of each current year, based upon the market price of commodities made during said year."

XI. His Honor erred, it is respectfully submitted, in refusing defendant's motion for new trial on additional ground No. 3, as follows: "That your Honor erred in not holding that the contract as set out in the complaint contained no time for the ascertaining of the net profits, and that therefore the net profits must be ascertained at the end of each year, and that the statement in the complaint that the compensation was to be paid at a later date could not be construed into meaning that the profits were to be ascertained at said later date; it being the duty of the Court to construe contracts and not to make them for the parties."

XII. His Honor erred, it is respectfully submitted, in refusing to direct on defendant's motion a verdict for the defendant as to that part of plaintiff's alleged percentage which was computed on the portion of cotton in question which the share-croppers were to have received under their respective contracts, as originally made, because the plaintiff had no interest whatever, under his contract and under the evidence, in that portion of the cotton, as same belonged, and may now belong, to the share-croppers (it being admitted that they have never been settled with), and consequently, as a matter of law, the plaintiff is not entitled to any net profits computable on that part of the cotton.

XIII. His Honor erred, it is respectfully submitted, in refusing defendant's motion for a new trial upon ground No. 2, as follows: "Your Honor erred, it is respectfully submitted, in refusing defendant's motion for a directed of verdict as to any commission claimed by the plaintiff out of, or because of, the share-croppers' portion of the crops here involved, because plaintiff's own evidence, and the view most favorable to him of the whole evidence adduced, shows either: (1) That such portion of the crops was acquired solely for the benefit of Dr. Holman, there being no evidence of any contract that plaintiff was to have shared therein; or (2) that there has never been any settlement or adjustment with said share-croppers as to such portion of the crops, and, according to plaintiff's testimony, no settlement was made with the share-croppers, who were merely credited with the market price of their share of the crop at the time they delivered the same, and therefore if any one would be entitled to any profits thereon, the share-croppers would be."

XIV. His Honor erred, it is respectfully submitted, in failing and refusing to charge defendant's fifth request to charge, as follows: "I charge you under the evidence here that in ascertaining the net profits, if any, of the business out of which plaintiff may be entitled to a commission, the value of the share-croppers' portion of the cotton in question cannot be taken into consideration." This was error, because the above request set forth a correct statement of the law applicable to the evidence in this cause and should have been charged.

XV. His Honor erred, it is respectfully submitted, in refusing defendant's motion for a new trial on ground No. 5, as follows: "Because your Honor erred, it is respectfully submitted, in refusing to charge the defendant's fifth request to charge, as follows: 'I charge you under the evidence here that in ascertaining the net profits, if any, of the business out of which plaintiff may be entitled to a commission, the value of the share-croppers' portion of the cotton in ques-

tion cannot be taken into consideration.' " This was error, because the above statement set forth a correct statement of the law applicable to the evidence in this cause and should have been charged.

XVI. His Honor erred, it is respecftully submitted, in refusing defendant's motion for new trial on additional ground No. 4, as follows: "That your Honor erred in not holding that the contract as set forth in the complaint and as proven only contemplated such profits as Holman should make out of his portion of the crops, and that it could not be construed to mean profits that might be made by Holman out of cotton bought from share-croppers or any one else."

XVII. His Honor erred, it is respectfully submitted, in charging the plaintiff's first request to charge, hereinafter quoted, and in refusing defendant's motion for a new trial on ground No. 8, for the reason stated in said ground, which ground No. 8 is as follows: "Because your Honor erred in charging the plaintiff's first request to charge, as follows: 'The jury is charged that every material allegation of the complaint in this suit which is not denied by the answer will be taken by you as being true. It is not necessary to introduce any evidence in support of such allegations, when they are not denied by the answer.' It was error to charge the foregoing to the jury because your Honor alone should have construed the pleadings and should not have submitted them to the jury for construction, and it is apparent from the verdict that the jury construed the pleadings to mean that the net profits could be ascertained on market prices prevailing several years after the conclusion of the plaintiff's overseer-ship and when the cotton in question was alleged to have been sold; whereas the answer does not admit that the contract was that the net profits could have been ascertained at such time, and the complaint itself, moreover, does not even allege that the net profits were to be ascertained or computed at that time, but merely that the plaintiff's commission was to

be paid then, which could not be construed to mean that they should be computed then.

XVIII. His Honor erred, it is respectfully submitted, in allowing counsel for plaintiff to ask the witness C. P. Exum the question. "Did you buy any cotton from him [Dr. Holman] about March 11 to 14, 1918?" and in allowing him to testify in answer that he bought about 400 bales, paying 30 cents per pound regardless of grade. His Honor also erred in admitting in evidence on behalf of the plaintiff, over objection of counsel for defendant, the following records and cotton certificates of Rowland Warehouse Company, to wit: Page 5 of book, Exhibit 1; No. 309, called out March 11, 1918, Exhibit 2; No. 310, called out March 11, 1918; No. 311, called out March 11, 1918; No. 312, called out March 11, 1918; No. 313, called out March 11, 1918; No. 314, called out March 11, 1918; No. 315, called out March 11, 1915; also Nos. 356, 315, 317, 318, 319, 320, 357, 321, 322, 323, 324, 325, 326, all canceled March 11, 1918; also Nos. 14, 15, 20, and 75, canceled same date—all showing a total of 405 bales of cotton delivered March 11, 1918, all of which was error, because under the evidence and the law of the case the plaintiff had no interest in any cotton sold in 1917, for the reason that, under the proven contract between him and Dr. Holman, plaintiff was to receive only a percentage of the net profits of the crop raised under his overseership; and, the contract being silent as to the time as of which said percentage was to be computed, it could only have been computed on the value of the cotton at the close of each respective year of his overseership, 1914 and 1915, respectively, and therefore this evidence was irrelevant and prejudicial to the defendant. It was further error because plaintiff failed to identify by proof this cotton as the cotton produced under his overseership.

XIX. His Honor erred, it is respectfully submitted, in allowing the examination of the plaintiff over the objection

as follows, and in admitting the evidence adduced by such examination, to wit:

"Q. Mr. Wells, how were the share-croppers settled with in 1914 and 1915?

"Q. Mr. Wells, don't talk about anything Dr. Holman bought with his own money. I am talking about the advances. You say that were charged in the expense, the items of $13,000 and $9,000, and the corn you say you advanced the share-croppers out of the barn. I just want to know how they were settled with. A. All the expenses for the operation of 1914 amounted to $13,000, which included the expenses of the share-croppers, their advances and supplies.

"Q. Was there anything owing the share-croppers at the end of the year? A. Their part of the cotton was stored in the warehouse while cotton was six cents a pound.

"Q. Were they settled with by you at all at the end— A. When they brought the cotton they were credited with the amount of the cotton they brought at five or six cents a pound; it was put in the warehouse.

"Q. Did they settle the account? A. So far as they were concerned, it was all settled. The six or seven cents a pound cotton didn't bring enough to pay their accounts.

"Q. Was that loss included in the expense items of $13,-000 and 9,000? A. It was included in there.

"Q. The Court: Do I understand you to say, Mr. Wells, all this cotton you claim you had an interest in, one 1,300 and one 900, do you claim that the share-croppers had interest in that at all? A. They didn't have any interest after the cotton was put in the warehouse.

"Q. The Court: How were they paid? A. They were paid at the price at that time. Share-croppers don't believe in holding cotton.

"Q. The Court: Were they paid? A. They were credited; we didn't pay them anything."

This was error, because under the contract proven and the law of the case plaintiff had no interest whatever in the share-croppers' portion of the crops in question, or any net profits therefrom, all of which belonged to the share-croppers themselves, and the testimony was therefore irrelevant.

XX. His Honor erred, it is respectfully submitted, in allowing the examination of plaintiff, over objection, as follows, to wit:

"Q. (reading). 'This defendant denies that the compensation of plaintiff was to have been as alleged in the second paragraph of the complaint, which is hereby answered, but, on the contrary, this defendant alleges that the agreement was that the plaintiff should be paid for his services the sum of $50 per month, which the defendant has paid in full for each and every month the plaintiff was in his employ, and in addition thereto plaintiff was to receive only 10 per cent. of the net profits realized from the business referred to in the complaint, and no more.' Any such contract as that?

"Q. Mr. Wells, state whether or not any such contract as that was made. A. No, sir; I never heard of it before."

This was error, because obnoxious to Section 438, Code of Civil Procedure of 1912, being a transaction with decedent, and was not in reply to any evidence to the contrary of above, there being no such evidence adduced to which the above purports to reply, being no evidence, and was not evidence.

XXI. His Honor erred, it is respectfully submitted, in allowing the following examination of plaintiff, over objection, and in admitting the evidence adduced by such examination, to wit:

"Q. (reading). 'Answering paragraph 4 of the complaint, this defendant admits that he stored some of the cotton referred to in the complaint, and did not sell the same until 1918 and 1919, but alleges that this was done after plaintiff had severed all connection with said business, and while he had no interest in such cotton, as hereinafter alleged.' Did

18—S. C.—124

you have any interest in the cotton in 1918 and 1919? 'Q. Did you part with your— A. No, sir."

This was error, because a mere conclusion, and because under no view of the evidence could the plaintiff have had any interest to have parted with, he being only an overseer, entitled to wages, based on a percentage of profits, and never did have any interest in or lien upon the cotton.

XXII. Your Honor erred, it is respectfully submitted, in allowing the following examination of the plaintiff, over objection, and in admitting the evidence adduced by such examination, to wit: "Q. Now, do you owe Dr. Holman anything like $367?' A. No, sir." This was error, because obnoxious to Section 438, Code of Civil Procedure 1912, being a transaction with a decedent; and there was no evidence adduced in the case to which the above was a reply.

XXIII. His Honor erred, it is respectfully submitted, in refusing to admit in evidence, when offered by the defendant, letter of Frank A. Wells to Dr. F. K. Holman, dated July 2, 1918, with writing indorsed at the top of said letter purporting to be a copy of reply to it sent by Dr. Holman to F. A. Wells, and in holding that it must first have been shown that the same was mailed by Dr. Holman to Mr. Wells, which was error, because the said evidence was relevant, competent, and necessary for the defense on the issue of a settlement having been had between the parties as alleged in the answer, and, its authenticity having been proven, together with the fact that the copy of the reply was in the handwriting of Dr. Holman, a decedent, and found with the original letter from Wells, to which it replied, among his papers, raised a presumption of the original reply having been transmitted to the plaintiff, rendering the copy admissible in evidence under the notice to produce served on plaintiff's attorneys, and making it a question for the jury as to whether or not it had been sent to plaintiff.

XXIV. His Honor erred, it is respectfully submitted, in allowing the jurors, at the instance of counsel for plaintiff,

over objection of counsel for the defendant, to take notes of parts of the evidence in the case, and especially after a number of the witnesses had already been heard before this commenced; it being the duty of the jury to pass on the whole evidence rather than such parts as such notes should unduly stress before them.

XXV. His Honor erred, it is respectfully submitted, in refusing defendant's motion for new trial on additional ground No. 5 as follows: "That your Honor erred, it is respectfully submitted, in not holding that the plaintiff's testimony as to expenses incurred was too general, uncertain, and speculative, and for that reason the plaintiff is not entitled to recover; he having failed to make out his case as alleged in the complaint."

*Messrs. Lee & Moise, Purdy & Bland* and *M. W. Seabrook,* for appellant, cite: *Plaintiff as overseer entitled to compensation for labor:* 20 S. C., 11; 2 Bail 581; 40 S. C., 51. *Entitled to no more than share of profits when crop divided or sold:* 12 Allen (Mass.), 354; 17 C. J., 862; note 87; 5 Vana (Ky.), 536. *Answer must be considered as a whole:* 15 S. C., 268; 9 S. C., 459; 2 Strob., 415; 22 C. J., 332. *Pleading must not be construed against pleader:* 12 S. C., 1; 12 S. C., 576; 25 S. C., 123; 38 S. C., 241; 8 S. C., 104; 29 S. C., 258; 75 S. C., 125. *Improper for jury to keep notes:* 38 S. C., 182.

*Messrs. Raymon Schwartz* and *Epps & Levy,* for respondent, cite: *Allegation of complaint not denied is admitted:* 16 S. C., 579; Code Proc. 1912 Sec. 219; 35 S. C., 165; 98 S. C., 136. *Denial of whole transaction does not come within* Code Proc., 1912 Sec. 438; 26 S. C., 163; 34 S. C., 246; 30 S. C., 289; 78 S. C., 23. *Where funds are traced into hands of a fiduciary he must account for them:* 100 S. C., 51; 115 S. C., 262. *As to granting supersedeas:* 35 S. C., 584.

May 1, 1923.

The opinion of the Court was delivered by Mr. Chief Justice Gary.

The principal issue of fact under the pleadings arises out of the allegations in the second paragraph of the complaint and their denial by the second paragraph of the answer. There was testimony tending to sustain the allegations of the complaint, and the findings of fact by the jury are not reviewable by this Court. It is not necessary to consider the exceptions in detail,. as none of them, when the case is considered in its entirety, show prejudicial error.

Affirmed.

Mr. Chief Justices Fraser and Marion concur.

Mr Justice Watts dissents.

Mr. Justice Cothran disqualified.